EDWARD C. WALKER *vs.* ANDREW SHARPE & another.

The estate of a tenant at will, who occupies under an agreement to pay rent monthly, on the first day of each month, may be determined by a written notice, given on the first day of a month, and directing him to quit and deliver up the premises on the first day of the next month, although the monthly terms began on the first day of each month.

After an estate at will has been so terminated, one who has been put in possession by the agent of the owner, though secretly and under an invalid written lease for years, becomes a tenant at will to the owner, and may maintain a process of forcible entry and detainer against the former tenant, who has regained possession.

ACTION under Gen. Sts. *c.* 137, to recover possession of a store in Lawrence.

At the trial in the superior court, before *Lord*, J., it appeared that Andrew J. Walker was the agent of the owners of the building, under a parol authority, and Andrew Sharpe, one of the defendants, occupied the store in question as tenant at will, for about three years previous to September 1866, under an agreement made by him with Walker, and by said agreement he was to pay his rent monthly on the first day of each month, and the rent was generally paid on the first day of the month, and receipts for rent were given in this form, to wit: "Andrew Sharpe to the Proprietors of Central Block, Dr., to rent of store one month, to date," and dated the first day of the month. Walker testified that the rent paid on the first day of each month was in full of rent only for the preceding month. On the first day of August 1866, written notice to quit was given to Sharpe, for the purpose of determining his tenancy on the first day of September. On the first day of September 1866, Walker executed a written lease under seal to the plaintiff, and the plaintiff caused said lease to be shown to Sharpe on the third of September, and possession of the store demanded. On the 17th of September, the plaintiff with Walker entered the store, (all the goods of Sharpe having been previously removed, except an old show-case and some empty boxes,) and took possession thereof under his lease, removed the lock from the front door, and put on another. This entry was made through a window in the roof. He retained possession thereof for an hour or two, and then one

of the defendants made an entry through another window in the roof, opened a back door and admitted the other defendant and another person, and the three seized the plaintiff, and with force and violence carried him out of the store.

The plaintiff here rested his case; and the judge ruled that if the monthly terms began on the first day of each month, then the notice was insufficient to determine the tenancy, as the tenant had already commenced upon a new month at the time named for the expiration of the notice; that, in order to determine the tenancy by deed or lease, it was necessary that the instrument should create an estate in the land in the person named as grantee or lessee, and that under the circumstances proved by the plaintiff the paper purporting to be a lease did not have such effect, and did not make such an alienation of the property as would determine the tenancy of Sharpe; that if, at the time of the forcible entry by the plaintiff, Sharpe had not surrendered possession of the store, and the tenancy had not been determined, then, as against these defendants, no rights were acquired by such entry.

The plaintiff thereupon submitted to a verdict for the defendants, and alleged exceptions.

*N. W. Harmon,* (*D. Saunders, Jr.,* with him,) for the plaintiff.

*S. B. Ives, Jr.,* for the defendants. The notice to quit was defective. *Bay State Bank* v. *Kiley,* 14 Gray, 492. The written lease was invalid, Walker having no authority in writing and under seal. *Kimball* v. *Tucker,* 10 Mass. 192. *Gardner* v. *Gardner,* 5 Cush. 483. The lease therefore did not terminate the tenancy of Sharpe. *Hildreth* v. *Conant,* 10 Met. 298. *Howard* v. *Merriam,* 5 Cush. 575. *McFarland* v. *Chase,* 7 Gray, 462. Sharpe accordingly was in lawfully, never having surrendered his possession; and the plaintiff was a mere trespasser, and being so cannot maintain this process.

CHAPMAN, J. The defendant was a tenant at will, paying rent monthly on the first day of each month. On the first day of August 1866, the agent of his landlord gave him notice in writing to quit on the first day of the next month. By Gen Sts. *:.* 90, § 31, an estate at will may be determined by notice

in writing; " and when the rent reserved is payable at periods of less than three months, the time of such notice shall be sufficient if it is equal to the interval between the days of payment." The notice in this case was exactly equal to that interval, and terminated on a day when rent was payable.

But the agent of the landlord testified that the rent paid on the first day of each month was in full of rent only for the preceding month. Upon this the presiding judge ruled that " if the monthly terms began on the first day of each month, then the notice was insufficient to determine the tenancy, as the tenant had already commenced upon a new month at the time named for the expiration of the notice." This is a point which has not before been ruled upon under the statute.

In *Prescott* v. *Elm*, 7 Cush. 346, rent was payable monthly, but it did not appear on what day it became payable. Notice to quit was given September 21st, and the action was commenced October 24th. The defendant objected that it should be made to appear that the notice covered an entire period intervening between the days when the rent was payable. The court so held, because otherwise the landlord or tenant might be a loser by the termination of the notice at some other day than the rent day; and the case was sent to a new trial, with the instruction that, if the rent was payable on the 21st of the month, the notice was seasonably given. But the question what would be the effect of the payment of rent for a month terminating the preceding day did not arise.

In *Sanford* v. *Harvey*, 11 Cush. 93, the tenancy commenced on the 15th day of the month, and the rent was payable on that day of the next month. Two notices were given to the landlord of an intention to quit, and both were held bad, because they did not terminate on a day when rent was payable. The case of *Currier* v. *Barker*, 2 Gray, 224, was decided on the ground that the notice fixed no time to quit, and therefore operated as a notice to quit forthwith, and was bad on that account. The remarks of the court are not applicable to the point raised here The same observation applies to *Steward* v.

*Harding*, 2 Gray, 335. In *Bay State Bank* v. *Kiley*, 14 **Gray,** 492, the remark of the court, that " the notice given on the 2d of May was too late to save the lessee from liability for rent for that month," contains an error as to the day when the notice was given. But if it applies to the first of May, that day did not appear to be the rent day; and so that case is not like this. At the trial of the cause, the plaintiffs objected that the notice was inoperative because it did not expire on a rent day; and the judge ruled that if the term began on the first day of the month it would end on the last, and so the notice would be bad upon its face, and would be good only in case the jury should find that the term began on the second day of the month. This ruling was held to be correct. But it assumed that the rent was payable for a term ending on a rent day, and not for a term ending the day before. In *Hultain* v. *Munigle*, 6 Allen, 220, the notice was held bad because it did not show on its face when the tenant was required to quit. The rent was payable every Saturday, and the court say, " he was entitled to seven days' notice to quit on a rent day ; that is, on some Saturday." But in that case the week for which the rent was paid did not expire on Friday ; so that it was unlike this case.

If we sustain the ruling of the court in this case, we must hold that there ought to have been a notice to quit on the day before the rent day, and served at some time prior to the preceding rent day. Adhering to the decisions above cited, and to the words of the statute as construed by those decisions, we must hold that the notice should terminate on a day when rent is payable; and it will then follow that the notice will not be sufficient in such a case as this, though it is equal to the interval between the days of payment, but must be at least one day longer than that interval.` This would be directly contrary to the statute. We do not feel at liberty to carry the construction of a statute to such a length.

It is to be considered that the object of the statute was to fix an arbitrary rule for the determination of estates at will by written notice. Its language is plain. For the reasons stated .

in the cases above cited, the court held that such notices must terminate on a day when rent was payable. There is no sound reason for going further, and holding that in some cases the notices must be given for a greater length of time than the statute requires. Nor would there be any good reason for modifying the decisions already made, and holding that in cases like the present the notice should terminate on the day before the rent day. It would tend to introduce more uncertainty into the subject than now exists. It is sufficiently difficult already to give a valid notice. Yet it is a point as to which there should be as much clearness and certainty as possible.

We are aware that some of the difficulty grows out of the nature of the subject; and we can see that new questions might arise in cases where credit is given for rent. But we do not regard the present case as one where credit is given. It is nothing more than an agreement to make the rent payable immediately after the term for which it is paid is fully complete and ended.

Walker, the agent, did not enter till after the tenancy was terminated. He was then rightfully in, and could lawfully put the plaintiff in possession, even though the lease to the plaintiff was not properly executed. The plaintiff thus became at least tenant at will to the owners, and can maintain this process for an interference with his own title and possession. He was in fact tenant in possession claiming under a lease for years, and being thus in, the defendants have no right to question the validity of his lease.       *Exceptions sustained.*